IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHARLEY HUGHES,

      Plaintiff,

      v.                                                               CASE NO. 19-3014-SAC

DAN SCHNURR, et al.,

      Defendants.

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 22), filed by Defendants Dan Schnurr, Doug Burris, Patti Keen, and Brooke Combs. The motion is ripe for decision as Plaintiff has failed to file a timely response. Defendants' motion is granted for the reasons stated herein.

**I.    Procedural History**

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging constitutional violations based on the censorship of an issue of the San Francisco Bay View newspaper and Socialist Viewpoint newspaper. Plaintiff is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). The Court granted Plaintiff leave to proceed *in forma pauperis*. (Doc. 5.)

On May 1, 2019, the Court entered a Memorandum and Order (Doc. 6) finding that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate officials of HCF. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court ordered the appropriate

1

officials of HCF to prepare and file a *Martinez* Report. The *Martinez* Report was filed on September 9, 2019. (Docs. 17, 18.)

On November 8, 2019, Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Docs. 22, 23). Because Defendants rely on their *Martinez* Report, the Court will consider the motion as a motion for summary judgment. *See Dease v. Webb*, ___ F. App'x ___, 2019 WL 5801704, at *1 (10th Cir. Nov. 7, 2019) (unpublished opinion) (noting that court converted motion to dismiss to motion for summary judgment where motion relied on materials outside of the second amended complaint, and granted the motion based on failure to exhaust) (citing Fed. R. Civ. P. 12(d)); *McDiffett v. Nance*, No. 17-3037-JAR-JPO, 2019 WL 4736951, at *3 (D. Kan. Sept. 27, 2019) (because the court considered materials outside of the pleadings—namely the *Martinez* Report—defendants' motion to dismiss or alternatively for summary judgment was evaluated using the standards for summary judgment); *Evans v. Cawthorn*, Case No. 16-3095-DDC-ADM, 2019 WL 5787952, at n.6 (D. Kan. Nov. 6, 2019) ("On summary judgment, a *Martinez* Report 'is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence' . . . [b]ut 'absent valid challenge,' the *Martinez* Report 'may be treated as providing uncontroverted facts.'") (internal citations omitted).

As required by Local Rule 56.1(f), Defendants provided Plaintiff, who is proceeding *pro se*, with the required notice regarding motions for summary judgment. (Doc. 24.) The notice was mailed to Plaintiff's address of record. *Id*. at 2. Plaintiff's response deadline was November 29, 2019. *See* D. Kan. Rule 6.1(d)(2) ("Responses to . . . motions for summary judgment . . . must be filed and served within 21 days."). To date, Plaintiff has not filed a response to the motion for summary judgment. Therefore, because Plaintiff has failed to timely file a response, Defendants'

statement of facts set forth in the Memorandum in Support (Doc. 23) are deemed admitted to the extent such facts are supported by the record. Under Fed. R. Civ. P. 56(e), if a party fails to properly address the moving party's factual assertions, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

## II.    Uncontroverted Facts

1. Plaintiff Charley Hughes has been in KDOC custody since 2010 and located at Hutchinson Correctional Facility (HCF) since March 2017. (Doc. 17–1, at 1–2.)

2. Defendant Dan Schnurr has been Warden at HCF since June 2016. (Doc. 17–4, at ¶ 1.)

3. Defendant Patti Keen, at all times relevant to Hughes' claims, supervised the HCF mailroom and was responsible for reviewing publications received by inmates and seizing those that the Publication Review Officer directed to be withheld. (Doc. 17–7, at ¶¶ 1–2.)

4. Defendant Brooke Combs, at all times relevant to the complaint, was employed at Lansing Correctional Facility as the KDOC Publication Review Officer. (Doc. 17–9, at ¶¶ 1–2.)

5. Defendant Doug Burris, at all times relevant to the complaint, served as the Secretary of Corrections' designee for reviewing inmates' appeals of publication withholding decisions and for approval or denial of property claims. (Doc. 17–5, at ¶¶ 1, 8.)

*KDOC Policy for Withholding Publications*

6. KDOC Internal Management Policy and Procedure 12-134A guides HCF's review of publications mailed to inmates. (Doc. 17–11; Doc. 17–9, at ¶ 5; Doc. 17–5, at ¶ 1.)

7. Each publication is individually reviewed under the criteria in KAR 44-12-601. (Doc. 17–11, at 1; Doc. 17–5, at ¶ 1.)

3

8. Under KAR 44-12-601(d)(1) and (g), publications may be withheld when there is a reasonable belief that it constitutes "a threat to institutional safety, order, or security." (Doc. 17–9, at ¶ 4.)

9. When mailroom staff at HCF think a publication might be subject to being withheld, they refer it to the Publication Review Officer at LCF with examples in support. (Doc. 17–11, at 1–2; Doc. 17–4, at ¶ 4.)

10. The Publication Review Officer reviews the publication and determines whether it should be withheld. (Doc. 17–11, at 2; Doc. 17–9, at ¶¶ 2–3; Doc. 17–4, at ¶ 5.)

11. If a publication is withheld, a Notification of Publication Seizure/Censorship identifying the publication seized and the reason why it was withheld is completed and provided to all inmates who are affected. (Doc. 17–11, at 2, 6; Doc. 17–9, at ¶ 6; Doc. 17–5, at ¶ 7; Doc. 17–7, at ¶ 5.)

12. The notification provided to inmates explains: "If you wish to appeal this decision, you must do so within 15 business days of the date of this notice by sending the appeal and publication to KDOC Secretary, Publication Appeals . . . ." (Doc. 17–11, at 6; Doc. 17–9, at ¶ 9.)

13. The inmate can appeal by completing the form on the notification and having the facility mailroom send the publication to the central office in Topeka for review. (Doc. 17–11, at 3; Doc. 17–9, at ¶ 9; Doc. 17–4, at ¶ 6; Doc. 17–7, at ¶ 5.)

14. The inmate has to pay the postage to send the publication to the central office and so is required to complete an Account Withdrawal Request (AWR). (Doc. 17–11, at 3; Doc. 17–9, at ¶ 9; Doc. 17–4, at ¶ 6; Doc. 17–7, at ¶ 5; Doc. 17–8, at ¶ 3.) The AWR is processed in accounting. (Doc. 17–7, at ¶ 6.)

15. When the Secretary of Corrections' designee receives the appeal, he conducts an independent review and then issues a decision. (Doc. 17–11, at 3; Doc. 17–4, at ¶ 7; Doc. 17–7, at ¶ 5.)

16. This decision can be appealed to the court. (Doc. 17–4, at ¶ 7.)

17. On July 30, 2019, the acting Secretary of Corrections issued a memorandum about KDOC's change of policy on the review of publications. (Doc. 17–5, at ¶ 10; Doc. 17–17.)

18. Under the new policy, the existing database of censored publications is being eliminated and inmates are welcome to re-submit, through the publisher, any publication previously seized to be reconsidered for admission into the correctional facilities. *Id.*

*Publications Seized*

19. As mailroom supervisor at HCF, Keen reviewed the San Francisco Bay View April 2017 Col. 42 No. 4 newspaper sent to Hughes and submitted a copy to the Publication Review Officer. (Doc. 17–7, at ¶ 3.)

20. Upon review, the Publication Review Officer validated the seizure of the San Francisco Bay View April 2017 newspaper. (Doc. 17–7, at ¶ 3.)

21. Hughes received a Notification of Publication Seizure/Censorship on April 17, 2017, indicating that the April 2017 San Francisco Bay View was rejected because "the content of this newspaper poses a threat to the safety and security of correctional facilities" and because of "inflammatory content." (Doc. 17–13.)

22. Burris, as designee for the Secretary of Corrections, approved the seizure of the April 2017 San Francisco Bay Review because of various content that was racially directed and could incite violence or behavior in inmates, threatening the safety and security of the correctional facilities. (Doc. 17–5, at ¶ 3.)

23. Burris has consistently denied publications based upon hate-type speech directed at other offenders and staff. *Id.*

24. Other than responding to the withholding appeals, Burris had no involvement with the matters in Hughes' complaint. *Id.* ¶ 9.

25. Later, the HCF mailroom received a copy of the Socialist Viewpoint Vol. 17, No. 2 magazine. Keen submitted a copy to the Publication Review Officer on August 28, 2019.[1] (Doc. 17–7, at ¶ 4.)

26. The Publication Review Officer validated the seizure of the Socialist Viewpoint Vol. 17, No. 2. (Doc. 17–7, at ¶ 4.)

27. Hughes received a Notification of Publication Seizure/Censorship on September 8, 2017, indicating that the March-April 2017 Socialist Viewpoint was rejected because "the content of this newspaper poses a threat to the safety and security of correctional facilities" and because of "inflammatory content." (Doc. 17–14.)

28. Warden Schnurr had no involvement with the publication withholding and appeal process or the censorship of the two magazines referenced by Hughes. (Doc. 17–4, at ¶¶ 3, 8.)

*Failure to Exhaust Administrative Remedies*

29. Both of the Notifications of Publication Seizure/Censorship that Hughes received explained: "If you wish to appeal this decision, you must do so within 15 business days of the date of this notice by sending the appeal and publication to KDOC Secretary, Publication Appeals" in Topeka. (Doc. 17–13; Doc. 17–14.)

---

[1] The August 28, 2019 date appears to contain a typographical error regarding the year. The following paragraph states that the Publication Review Officer validated the seizure with a notation Keen sent to Plaintiff on September 8, 2017. (Doc. 17–7, at ¶ 4.)

30. Hughes did not appeal the seizure of the San Francisco Bay View April 2017 newspaper and the publication was destroyed on August 31, 2017. (Doc. 17–7, at ¶ 3.)

31. HCF's accounting records show that Hughes did not use the AWR process to send an appeal around April of 2017. (Doc. 17–8, at ¶ 5.)

32. Although Burris received an inmate appeal for the April 2017 edition of San Francisco Bay Review, he found no indication that Hughes appealed this seizure. (Doc. 17–5, at ¶ 5.)

33. Hughes did not appeal the seizure of the March-April 2017 Socialist Viewpoint magazine. (Doc. 17–7, at ¶ 4.)

34. Indeed, no one appealed the withholding of the March-April 2017 edition of the Socialist Viewpoint. (Doc. 17–5, at ¶ 6.)

35. HCF's inmate expenditure records show that Hughes only used the AWR process twice in 2017, and neither was for the purpose of sending a publication to Topeka. (Doc. 17–10.)

36. HCF's grievances and property claims records show that Hughes did not submit a property claim for the withholding of either the San Francisco Bay View or Socialist Viewpoint in the April 2017 timeframe. (Doc. 17–6.)

37. Warden Schnurr did not receive any property claims from Hughes about the seizures in April or May of 2017. (Doc. 17–4, at ¶ 9.)

38. Burris did not find that he received or acted on any property claim filed by Hughes about either of the publication withholdings in 2017. (Doc. 17–5, at ¶ 8.)

39. Based on the lack of proof he exhausted his administrative remedies for the seizures, counsel for HCF sent Hughes a letter on May 31, 2019 asking him to provide supporting documentation. (Doc. 17–2.)

40. Hughes did not respond to this request. (Doc. 17, at ¶ 1.)

41. On July 26, 2019, counsel for HCF again sent Hughes a letter asking for any documentation supporting his contention that he exhausted his administrative remedies for the publication seizures. (Doc. 17–3.)

42. Hughes did not respond to this request either. (Doc. 17, at ¶ 1.)

### III. Summary Judgment Standards

"[S]ummary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018) (quoting *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017) (quotations omitted); *see* Fed. R. Civ. P. 56(a)). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law" and is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Disputed facts are resolved in favor of the nonmoving party. *McCoy*, 887 F.3d at 1044 (citation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id.* (citing *Patel*, 849 F.3d at 978 (quotations omitted)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Id.* (quoting *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (quotations omitted)).

### IV. Analysis

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court.

Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted). "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249. A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the

prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). "Although a defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies,' once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (alteration in original) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).

HCF's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). Plaintiff has failed to follow all of those steps. Plaintiff received a written notification form for each withheld publication explaining the process for him to appeal the decision and the requirement that it be done within 15 business days. (Doc. 17–13; Doc. 17–14.) This required him to complete the appeal form on the notice he received and submit an AWR to cover the postage of mailing the publication to the designee of the Secretary of Corrections.

Although Plaintiff states that "[he] appealed and the appeal was denied by Doug Burris," Doc. 1 at 2, the *Martinez* Report shows he did not appeal either seizure. Patti Keen, the mailroom supervisor at HCF, declares that Plaintiff never appealed either seizure. (Doc. 17–7, at ¶¶ 3-4.) Doug Burris could find no indication that Plaintiff appealed the seizure of the April 2017 edition of the San Francisco Bay Review, and no one appealed the seizure of the March-April 2017 edition of the Socialist Viewpoint. (Doc. 17–5, at ¶¶ 5–6.) Reviews of HCF's accounting records and

inmate expenditure records show that Plaintiff did not use the AWR process to send any publication from HCF to Topeka for appeal in 2017. (Doc. 17–8, at ¶ 5; Doc. 17–10.)

Nor did Plaintiff file a property loss claim for the seizures. (Doc. 17–6; Doc. 17–5, at ¶ 8; Doc. 17–4, at ¶ 9.) While he claims "[he] grieved the censorship and discrimination issue to the Warden and he failed to address the issue," Doc. 1 at 1, Warden Schnurr denies having any involvement whatsoever with the April 2017 censorship of the San Francisco Bay View and Socialist Viewpoint. (Doc. 17–4, at ¶¶ 3, 8.) Finally, counsel for HCF sent Plaintiff letters on two different occasions requesting any documentation supporting his contention that he exhausted his administrative remedies for these seizures. (Doc. 17–2; Doc. 17–3.) Plaintiff did not respond. (Doc. 17, at 3.) The evidence in the *Martinez* Report makes clear that Plaintiff made no attempt to exhaust his administrative remedies.

The issue of Plaintiff's failure to exhaust his available administrative remedies prior to filing his lawsuit must be determined before reaching the merits of his lawsuit. *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court") (citation omitted); *see also Jernigan*, 304 F.3d at 1032 (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim). The undisputed evidence shows that Plaintiff failed to exhaust available administrative remedies. Under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court." *Little*, 607 F.3d at 1249 (citations omitted). Accordingly, Plaintiff's Complaint must be dismissed without prejudice.

## V. Conclusion

Defendants are entitled to summary judgment in their favor because Plaintiff failed to exhaust his available administrative remedies prior to filing suit. The case is dismissed without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 22) is **granted.**

**IT IS FURTHER ORDERED** that this case is **dismissed without prejudice.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Discovery and Related Rule 26 Activities (Doc. 25) is moot and therefore **denied.**

**IT IS SO ORDERED**.

**Dated December 13, 2019, in Topeka, Kansas.**

                                                  **s/ Sam A. Crow**
                                                  **Sam A. Crow**
                                                  **U.S. Senior District Judge**